IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**


Civil Case No.  09-cv-00763-PAB-KLM

TIC-THE INDUSTRIAL COMPANY,

      Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY,

      Defendant.

---

## ORDER REMANDING CASE PURSUANT TO 28 U.S.C. § 1447 WITH AWARD OF JUST COSTS AND ACTUAL EXPENSES

---

On April 3, 2009, defendant Liberty Mutual Insurance Company ("Liberty Mutual") removed this breach-of-contract and bad-faith insurance case from State court to this Court for a third time.  The matter comes before the Court on plaintiff TIC-The Industrial Company's ("TIC") Motion to Remand [Docket No. 7].  For the reasons discussed below, I conclude that Liberty Mutual's removal is procedurally defective and, as a consequence, the case must be remanded to the State court yet again.  I further conclude that Liberty Mutual had no reasonable basis for removing the case for what is now the third time.  As a result, and pursuant to 28 U.S.C. § 1447(c), Liberty Mutual shall pay TIC's just costs and any actual expenses, including attorney's fees, incurred as a result of this third removal.

## A.  Procedural History

TIC commenced this action against defendant Liberty Mutual in the District Court for Routt County, Colorado on January 27, 2009 [Docket No. 1-2].  On February 20, 2009, defendant Liberty Mutual filed a notice of removal with this Court, invoking the Court's jurisdiction under 28 U.S.C. § 1332 [Civil Action No. 09-cv-00365-MSK, Docket No. 1].  However, Liberty Mutual failed to provide any evidentiary support for its matter-of-fact averment that the amount in controversy exceeded $75,000 – the jurisdictional minimum under § 1332.  As a result, on February 25, 2009, Judge Marcia S. Krieger, acting *sua sponte*, remanded the case to State court due to Liberty Mutual's failure to satisfy its burden in proving facts that established Federal court jurisdiction over the matter.  *See TIC-The Indus. Co. v. Liberty Mut. Ins. Co.*, No. 09-cv-00365-MSK, 2009 WL 498016 (D. Colo. Feb. 25, 2009).

On February 25, 2009, shortly following Judge Krieger's remand Order, Liberty Mutual once again removed the case to this Court [Civil Action No. 09-cv-00402-JLK-KMT, Docket No. 1].  In response to Judge Krieger's remand Order and "[a]s proof that the amount in controversy exceeds $75,000," defendant Liberty Mutual included within its second petition for removal a reference to the Civil Case Docket Cover Sheet filed by TIC in State court.  *See* Def. Liberty Mutual Insurance Company's Second Pet. for Removal [Docket No. 1] ¶ 6-7.  Liberty Mutual offered no additional evidence establishing the amount in controversy.  As a result, on March 3, 2009, Judge John L. Kane, also acting *sua sponte*, remanded the case to State court for what was the second time.  *See TIC-The Indus. Co. v. Liberty Mut. Ins. Co.*, No. 09-cv-00402-JLK-

KMT, 2009 WL 535815 (D. Colo. Mar. 3, 2009).  Judge Kane noted that it was well settled in this district that Civil Cover Sheets alone are not sufficient to establish the amount in controversy.  Because Liberty Mutual failed to provide additional evidence demonstrating that the amount in controversy exceeded $75,000, Judge Kane remanded the case back to the State court in Routt County.

On April 3, 2009, defendant Liberty Mutual removed the case from State court to this Court for the third time [Civil Action No. 09-cv-00763-PAB-KLM, Docket No. 1].  The notice of removal urges that plaintiff TIC's initial disclosures in the State court action, which were served on Liberty Mutual on March 23, 2009, constituted an amended pleading, motion, order, or other paper from which the amount in controversy first became ascertainable.  *See* Def. Liberty Mutual Insurance Company's Notice of Removal [Docket No. 1] ("Notice of Removal") ¶ 6.

On April 13, 2009, TIC filed a motion to remand the case back to State court [Docket No. 7].  TIC raised four arguments as to why remand is appropriate: (1) Liberty Mutual failed to include within its removal papers a copy of the summons in the State court action as required by 28 U.S.C. § 1446(a); (2) Liberty Mutual was well aware of the amount of TIC's claim long before TIC filed the State court lawsuit or served its initial disclosures, and could have included that information in either of its first two petitions for removal; (3) Liberty Mutual's third removal was barred by the doctrine of law of the case; and (4) Liberty Mutual's third removal was barred by the doctrine of res judicata.  *See* Mot. to Remand [Docket No. 7] at 3.  On April 14, 2009, Liberty Mutual filed a supplement to its notice of removal, attempting to address TIC's first argument by attaching a copy of the State court summons [Docket No. 8].  On April 15, 2009, TIC

3

filed a motion to strike that supplement as untimely [Docket No. 9].  On April 30, 2009,

Liberty Mutual filed a combined response to the pending motions to remand and strike

[Docket Nos. 10, 12].  On May 14, 2009, TIC replied in support of both of its motions

[Docket No. 15].  Therefore, the motions are fully briefed and ripe for review.  Because,

as I explain below, TIC's second argument in favor of remand is dispositive on the

issue, I do not address the others.

### B.  Substantive and Procedural Requirements for Removal

The substantive rules regarding removal generally permit a party to remove "any

civil action brought in a State court of which the district courts of the United States have

original jurisdiction."  28 U.S.C. § 1441(a) (2006).  Relevant to the present case, "[t]he

district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

is between . . . citizens of different States . . . ."  28 U.S.C. § 1332(a) (2006).

No one has contested the fact that the parties to this action are diverse.

However, the amount in controversy requirement proved to be problematic in Liberty

Mutual's two previous removal attempts.  In a removal case asserting the Court's

diversity jurisdiction, the removing party has the burden of establishing that the

jurisdictional prerequisites of § 1332, such as the amount in controversy, have been

satisfied.  *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

Liberty Mutual was unable to meet that burden in the first two Federal-court

incarnations of this case.

In this, the third incarnation, the amount in controversy is not contested and

indeed, based on the evidence before the Court, the amount in controversy appears to

be squarely on the proper side of the $75,000 dividing line.  Therefore, the substantive

rules for removal now appear to have been met.

However, the question presently before the Court is whether Liberty Mutual also

acted in accordance with the procedural rules for removal.  The two paragraphs of 28

U.S.C. § 1446(b) provide the relevant basis for consideration:

> The notice of removal of a civil action or proceeding shall be filed within
> thirty days after the receipt by the defendant, through service or
> otherwise, of a copy of the initial pleading setting forth the claim for relief
> upon which such action or proceeding is based, or within thirty days after
> the service of summons upon the defendant if such initial pleading has
> then been filed in court and is not required to be served on the defendant,
> whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of
> removal may be filed within thirty days after receipt by the defendant,
> through service or otherwise, of a copy of an amended pleading, motion,
> order or other paper from which it may first be ascertained that the case is
> one which is or has become removable, except that a case may not be
> removed on the basis of jurisdiction conferred by section 1332 of this title
> more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (2006).  "The failure to comply with these express statutory

requirements for removal can fairly be said to render the removal 'defective' and justify

a remand."  *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999)

(quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999)).

Based on the provisions of § 1446(b) and Liberty Mutual's assertions in its most

recent notice of removal, the pivotal issue is determining the point at which Liberty

Mutual was first able to ascertain that this case was or had become removable.  This

determination will be a function of the date on which Liberty Mutual could first ascertain

that the amount in controversy exceeded $75,000.  TIC argues that the amount in

controversy was ascertainable prior to the lawsuit being filed, but certainly no later than

the date Liberty Mutual received the initial pleading in the case.  Liberty Mutual argues, instead, that the amount in controversy was not ascertainable until it received TIC's initial disclosures on March 23, 2009.

Both parties agree that Liberty Mutual's third attempt at removing the case occurred more than thirty days after Liberty Mutual received a copy of TIC's initial pleading.  Therefore, if TIC is correct regarding the point at which the amount in controversy was first ascertainable, the first paragraph of § 1446(b) controls, the most recent removal is procedurally defective, and remand to State court would be appropriate.  *See Huffman*, 194 F.3d at 1077.  On the other hand, if Liberty Mutual is correct and the amount in controversy was first ascertainable when Liberty Mutual received TIC's initial disclosures on March 23, 2009, then the most recent removal occurred in a timely manner and is procedurally proper.

Upon review of the arguments and the record, I conclude that the amount in controversy was ascertainable no later than the time when Liberty Mutual received the Complaint.  First, under § 1446(b), in order for the amount in controversy to be "first ascertained" by some means other than the initial pleading, the statement in the initial pleading must be ambiguous or one which requires extensive investigation to determine the truth.  *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035-36 (10th Cir. 1998); *see also Huffman*, 194 F.3d at 1078 ("Under § 1446(b), the removal period does not begin until the defendant is able to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts." (internal quotation marks omitted)).

6

Under § 1446(b), the thirty-day clock starts running once defendant has "sufficient notice that the amount in controversy exceed[s] the jurisdictional minimum." *Huffman*, 194 F.3d at 1079.  The fair and logical application of this standard requires that, for the clock to start running, the defendant must have both the knowledge that the amount in controversy exceeds $75,000 and access to evidence that would allow it to prove that fact by a preponderance of the evidence.  *Cf. Huffman*, 194 F.3d at 1079 (listing the various pieces of proof that defendant had access to at the point § 1446(b)'s thirty-day clock started running); *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979) (suggesting that evidence which would not have supported removal was not sufficient to give a defendant notice that the case was removable); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (removing defendant must prove amount in controversy by a preponderance of the evidence (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936))).

I find that TIC's Complaint was not ambiguous and Liberty Mutual would not have had to undertake an extensive investigation to determine the amount in controversy.  I also find that Liberty Mutual had sufficient notice that the amount in controversy exceeded $75,000 because it had access to proof of that fact that was sufficient to support a finding by the Court that jurisdiction over this matter existed.

The Complaint sought payment under a Liberty Mutual insurance policy for costs incurred in connection with the construction of an ethanol plant that was damaged by high winds in February 2007.  *See* Notice of Removal, ex. A ("Compl.") ¶¶ 5, 9, 10. TIC's Complaint sought to recoup the "substantial costs related to the damage,

including but not limited to, costs associated with repairing the structure(s), maintaining equipment and personnel on site longer than originally anticipated, and delays in completion of other areas on the Project . . . ."  Notice of Removal, Compl. ¶ 11.  The Complaint also describes the correspondence regarding TIC's insurance claim that took place between TIC and Liberty Mutual's representatives, including Liberty Mutual's claims adjuster, York Claims Services, Inc.[1]  *See* Notice of Removal, Compl. ¶¶ 13-32.

TIC submitted copies of some portion of this correspondence along with its motion to remand.  *See* Mot. to Remand, exs. 6-13.  This documentation, dating back to 2007, shows extensive and detailed communication regarding the value of TIC's insurance claims.  The correspondence also includes several itemized breakdowns of the amounts sought.  From these documents, it is clear that the value of the claims asserted in the Complaint exceeds $75,000.  Therefore, by the time TIC filed its Complaint – the initial pleading in this case – Liberty Mutual was aware of and had evidence to support the fact that TIC's claims were for an amount in excess of § 1332's jurisdictional minimum.

Liberty Mutual accuses TIC of "attempting to frustrate the purpose of diversity jurisdiction" by excluding the amount in controversy in its Complaint.  *See* Def. Liberty Mutual Insurance Company's Opp'n to Mot. to Remand and Opp'n to Mot. to Strike [Docket No. 10] ("Def.'s Resp.") at 2.  Liberty Mutual cites the court's statement in *McPhail v. Deere & Co.* that "a plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount."  529 F.3d at 955.

---

[1] In its Answer to TIC's first amended Complaint, Liberty Mutual admitted that it retained York Claims Service, Inc.  *See* Notice of Removal, ex. B ("Answer") ¶ 13.

However, Liberty Mutual's reliance on *McPhail* is unavailing.  First, as discussed above, TIC has not attempted to hide the value of its claims from Liberty Mutual.  In fact, TIC sent Liberty Mutual and its agents detailed estimates of those claims prior to filing this lawsuit.[2]  Second, although the court in *McPhail* perceived a problem with plaintiffs being able to circumvent Federal court jurisdiction by omitting the amount in controversy in their complaints, the court addressed this problem by directing district courts to consider additional evidence.  Here, once that evidence is consulted, particularly the claims adjustment correspondence, it is apparent both that the amount in controversy exceeded $75,000 and that this fact could have been ascertained at the time Liberty Mutual received TIC's Complaint.  Furthermore, ascertaining the amount in controversy would not have required extensive investigation; all that was required of Liberty Mutual was that it consult the documents in its possession, documents to which TIC cited in its Complaint.

Liberty Mutual also contends, but without a sound basis for doing so, that it was unlikely that the Court would have accepted the claims adjustment correspondence as proof of the jurisdictional amount.  Liberty Mutual apparently believes that the fact that these documents were not verified is significant.  However, Liberty Mutual fails to provide any case law that would suggest such a standard.  On the contrary, Tenth Circuit precedent directs district courts to consider more than just documents that have been verified.  For example, when it is necessary, courts are to consult complaints (with

---

[2] TIC also correctly notes that the Colorado Rules of Civil Procedure restrict what a plaintiff may assert in a complaint with regard to its sought damages.  *See* Reply in Supp. of Mot. to Remand and Mot. to Strike [Docket No. 15] at 9 (citing C.R.C.P 8(a) ("No dollar amount shall be stated in the prayer or demand for relief.")).

no consideration of whether they are verified or not), copies of contracts, and even proposed settlement offers when deciding the jurisdictional question. *McPhail*, 529 F.3d at 956. Notable in the context of the present case, the court in *McPhail* indicated that "documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal." *McPhail*, 529 F.3d at 956; *see also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (noting that the list the court provided of the evidence that may be consulted is not exclusive and that "any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to . . . ."), *cited with approval by McPhail*, 529 F.3d at 954-56. Moreover, the court in *McPhail* suggested that all "summary-judgment-type evidence" may provide the basis for the amount in controversy determination and made specific mention of materials, such as the correspondence in the present case, which are referenced in a complaint. *See McPhail*, 529 F.3d at 956.

Liberty Mutual's purported belief that the Court would not accept the claims adjustment correspondence also lacks credibility in light of the circumstances of this case. During the first thirty days after receiving TIC's Complaint, Liberty Mutual attempted to rely solely upon an unverified document in order to establish the Court's subject matter jurisdiction over this case. After Judge Krieger reminded Liberty Mutual of its burden to prove jurisdictional facts, it apparently believed that the State court Civil Cover Sheet alone could meet that burden despite case law to the contrary and despite the fact that the Cover Sheet was not verified. This course of action belies Liberty

Mutual's current position that, during the first thirty-day period, it believed the Court would not consider unverified documents as evidence of the amount in controversy.

There is another reason that I find Liberty Mutual's current position is untenable. If the March 23, 2009 initial disclosures were indeed the means by which the amount in controversy first became ascertainable to Liberty Mutual – as Liberty Mutual now argues and which § 1446(b) requires for a valid removal – then Liberty Mutual attempted to remove this case twice prior to being able to ascertain the amount in controversy.  That likely would mean that Liberty Mutual's attorneys twice signed and filed "petitions for removal" which made affirmative declarations that TIC claimed damages in excess of $75,000 absent a reasonable basis for doing so.  This, of course, could run afoul of their duties of candor to the Court and Federal Rule of Civil Procedure 11.

The far more plausible explanation is that Liberty Mutual attempted to remove this case on the two earlier occasions because it knew that the case involved an amount in excess of $75,000.  It knew this, in part, because of the claims adjustment correspondence discussed above.  For some reason, however, despite having this correspondence in their possession, and despite Judge Krieger's admonition regarding the need for proof of jurisdictional facts, Liberty Mutual failed to cite it or other evidence sufficient to support a finding that the amount in controversy requirement was met. Therefore, contrary to Liberty Mutual's assertion, TIC's initial disclosures on March 23, 2009 were not the amended pleading, motion, order or other paper from which it may first have been ascertained that this case was one which was or had become removable.  Rather, Liberty Mutual was aware that the case met the jurisdictional

11

requirements of § 1332 at the time it received the initial pleading in the case, had sufficient evidence to that effect, yet failed twice to prove as much in this Court.

Because the evidence establishing that the amount in controversy exceeded $75,000 was known and available to Liberty Mutual at the time it received the initial pleading in this case, the Court's jurisdiction was ascertainable at that time. Therefore, the first paragraph of 28 U.S.C. § 1446(b) controls and Liberty Mutual had thirty days from its receipt of the initial pleading to remove the case to this Court. The most recent removal, which occurred well outside of that thirty-day window, is therefore procedurally flawed as untimely. TIC, on the other hand, met its procedural obligations by filing a motion to remand within the thirty days of the removal notice. *See* 28 U.S.C. § 1447(c) (2006) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."). Therefore, remand of the case to State court is appropriate. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999); *see also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995) ("[U]ntimely removal [is] precisely the type of removal defect contemplated by § 1447(c).").

### C. Award of Just Costs and Actual Expenses Under 28 U.S.C. § 1447(c)

In its motion to remand, TIC requests that the Court award it the costs and expenses it incurred as a result of the most recent removal. Pursuant to § 1447, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c)

12

(2006).  The decision of whether to award costs and expenses under § 1447(c) rests in the discretion of the district court.  *See Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1147 (10th Cir. 2004), *aff'd*, 546 U.S. 132 (2005); *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 325 (10th Cir. 1994).  This decision, however, is guided by the standards articulated by the Tenth Circuit Court of Appeals.

For example, although § 1447(c) requires "a showing that the removal was improper *ab initio*," *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997), "a plaintiff is not automatically entitled to attorney's fees simply because removal was ultimately determined to be improper."  *Martin*, 393 F.3d at 1147.  Rather, the analysis that focuses on the propriety of the removal asks whether the removing party had a legitimate, fair, or objectively reasonable basis for removing the case.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005); *Suder*, 116 F.3d at 1353; *Daleske*, 17 F.3d at 324-25; *see also Martin*, 393 F.3d at 1147-48.  Furthermore, although a court need not find that the removing party acted in bad faith in order to award costs and expenses under § 1447(c), evidence regarding the intent and diligence of the removing party need not be ignored in evaluating the propriety of the removal.  *See Daleske*, 17 F.3d at 324.

I conclude that Liberty Mutual had no legitimate, fair, or objectively reasonable basis for removing this case on April 3, 2009, well after the thirty-day period under the first paragraph of § 1446(b) expired.  As previously discussed, the amount in controversy, and the Court's resulting jurisdiction over this matter, was ascertainable at the time Liberty Mutual received the initial pleading.  Liberty Mutual knew or easily could

have discovered that the claims adjustment correspondence, from which the amount in controversy may have been ascertained, was evidence which the Court would consider. Liberty Mutual's argument to the contrary appears to be a *post hoc* rationalization for its lack of diligence.  Liberty Mutual also knew or should have known that the case had been remanded not because of a finding that jurisdiction was certainly lacking, but because Liberty Mutual failed to meet its burden in proving jurisdictional facts.

In summary, the following facts weigh in the Court's determination of the propriety of Liberty Mutual's third removal attempt:

(1)   Contrary to Liberty Mutual's assertion, TIC did not dissemble the value of its claims in this case.  Rather, it provided calculations of that value in various communications to Liberty Mutual and its agents and specifically cited to these communications in its Complaint.  Liberty Mutual knew from this claims adjustment correspondence that the amount in controversy in this case exceeded $75,000.  Liberty Mutual had access to this evidence prior to TIC's filing of its Complaint.

(2)   The claims adjustment correspondence gave Liberty Mutual sufficient notice of what the amount in controversy was.  Therefore, the amount in controversy was ascertainable and provable at the time TIC filed its complaint.  Liberty Mutual knew or should have known that the Court would consider the correspondence even though it was unverified.  Liberty Mutual's conjecture to the contrary has no basis in law and lacks credibility in light of the fact that Liberty Mutual cited an unverified document, the Civil Cover Sheet, as the only "proof" of the amount in controversy in its second petition for removal.

(3)   Liberty Mutual knew or should have known that the first paragraph of § 1446(b) controlled the time for removal in this case, giving it thirty days from the day it received the Complaint to remove the case to this Court.  Support for a finding that Liberty Mutual knew of this requirement can be found in the fact that Liberty Mutual attempted to remove this case twice during that thirty-day period.

(4)   Liberty Mutual's first two attempts to remove this case failed to comply with the law of this circuit and this district.  The case was remanded on both occasions because Liberty Mutual failed to meet its burden in proving the amount in controversy.  The case was not remanded because the evidence

14

supporting the fact that the amount in controversy exceeded $75,000 did not exist or because Liberty Mutual did not have access to that evidence. Rather the case was remanded both times because Liberty Mutual failed to inform the Court that the evidence in question existed.

(5)     Liberty Mutual knew or should have known that the second paragraph of § 1446(b) did not apply and that TIC's initial disclosures on March 23, 2009 were not the amended pleading, motion, order or other paper from which the amount in controversy, and as an extension Federal court jurisdiction, may have been *first* ascertained.

(6)     Liberty Mutual knew or should have known that its removal on April 3, 2009 was procedurally flawed, and, as a result, it would be proper for the Court to remand the case to State court for a third time.  Section 1447(c) and the case law interpreting it put Liberty Mutual on notice that removal without a legitimate, fair, or objectively reasonable basis would result in Liberty Mutual's liability for the just costs and actual expenses incurred by TIC as a result of the removal.

(7)     At the time Liberty Mutual removed this case, the law in this circuit was well settled regarding: (1) the standards for establishing this Court's jurisdiction in removal cases, *see Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001); (2) the meaning of "first ascertained" under 28 U.S.C. § 1446(b), *see Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035-36 (10th Cir. 1998); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999); (3) the evidence that a court will consider in a removal case regarding the amount in controversy, *see McPhail v. Deere & Co.*, 529 F.3d 947, 953-56 (10th Cir. 2008); and (4) the standard regarding the award of just costs and actual expenses under 28 U.S.C. § 1447(c), *see Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).  The fact that the law in this circuit was well settled at the time of removal militates against a finding that there was a legitimate, fair, or objectively reasonable basis for that removal.  *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997).

(8)     Pursuant to 28 U.S.C. § 1447(c), the Court retains jurisdiction over the question of costs and actual expenses.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005) (noting that "the predecessor to § 1447(c) was enacted, in part, because courts would otherwise lack jurisdiction to award costs on remand").

In light of these facts, I conclude that Liberty Mutual had no legitimate, fair, or objectively reasonable basis for removing this action on April 3, 2009.

The impact of Liberty Mutual's course of action is that progress in this case, filed almost six months ago, has been paralyzed as the case has rebounded between State and Federal court.  Although I do not find that Liberty Mutual's third attempt at removal amounts to bad faith, it does further undercut any assertion that Liberty Mutual had a legitimate, fair, or objectively reasonable basis for removing this case a third time. Rather, Liberty Mutual's troubles appear to have resulted from a lack of care and diligence regarding its practice before this Court.  Therefore, pursuant to 28 U.S.C. § 1447(c), TIC is entitled to its just costs and any actual expenses, including attorney's fees, incurred as a result of Liberty Mutual's third removal of this case, which occurred on April 3, 2009.

### D.  Conclusion

For the reasons previously discussed, I hold that Liberty Mutual's most recent removal of this case, filed on April 3, 2009, was inexcusably filed after the thirty-day period for removal allowed by Congress in 28 U.S.C. § 1446(b).  As a result the removal is procedurally defective and remand of the case is appropriate.  I further find that Liberty Mutual lacked a legitimate, fair, or objectively reasonable basis for removing this case on April 3, 2009.  As a result, TIC is entitled to receive its just costs and any actual expenses, including attorney's fees, incurred as a result of this most recent removal.

Therefore, it is

**ORDERED** that plaintiff TIC-The Industrial Company's Motion to Remand [Docket No. 7] is GRANTED.  This case is REMANDED to the District Court, Routt

County, Colorado, where it was filed originally as Case No. 04 CV 14, Division 2A.  It is further

   **ORDERED** that pursuant to 28 U.S.C. § 1447(c), defendant Liberty Mutual Insurance Company shall pay the just costs and any actual expenses, including attorney's fees, incurred by plaintiff TIC-The Industrial Company as a result of the removal that occurred on April 3, 2009.  It is further

   **ORDERED** that plaintiff TIC-The Industrial Company's Motion to Strike [Docket No. 9] is DENIED as moot.


       DATED June 23, 2009.

                                          BY THE COURT:


                                          s/Philip A. Brimmer_____
                                          PHILIP A. BRIMMER
                                          United States District Judge